Randall B. Bateman (USB 6482)
Sarah W. Matthews (USB 13295)
DURHAM JONES & PINEGAR
111 South Main Street, Suite 2400
Salt Lake City, UT 84111
Tel: (801) 415-3000/Fax: (801) 415-3500
Email: ipmail@djplaw.com; rbateman@djplaw.com; smathews@djplaw.com

*Attorneys for Plaintiff YL Wisdom, LLC, d.b.a. Life Science Publishing*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| YL WISDOM, LLC, a Utah limited liability company, d.b.a. Life Science Publishing, <br><br> Plaintiff, <br> vs. <br><br> MELISSA SHELTON, an individual, and CROW RIVER ANIMAL HOSPITAL, Ltd., a Minnesota Corporation. <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> **Case No. 2:17-cv-1135-BCW** <br><br> **Mag. Judge Brooke C. Wells** |

Plaintiff YL Wisdom, LLC, d.b.a. Life Science Publishing, complains against Defendants

Melissa Shelton and Crow River Animal Hospital as follows:

### PARTIES

1.      Plaintiff YL Wisdom, LLC, d.b.a. Life Science Publishing ("LSP"), is a Utah

limited liability company having a principle place of business in Orem, Utah.

2.      On information and belief, Melissa Shelton ("Shelton") is a resident of

Minnesota.

3.      On information and belief, Crow River Animal Hospital, Ltd. ("CRAH"), is a Minnesota corporation having a principle place of business in Howard Lake, Minnesota.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 2201.

5.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are related to the claims of this action within the Court's original jurisdiction.

6.      This Court has personal jurisdiction over the Defendants because at least some of the acts alleged herein occurred in this District, Defendants have repeatedly traveled to Utah and engaged in agreements giving rise to the allegations in this Complaint, Defendants have transacted business in this District,  and Defendants have caused injury within this District.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims stated herein have occurred in this District or involve agreements and communications made with people in this District.

## GENERAL ALLEGATIONS

8.      Essential oils are plant extracts which are believed to have properties which promote health and well-being.

9.      One of the premier providers of essential oils is Young Living Essential Oils, LLC ("Young Living") of Lehi, Utah.

10.      There are multiple companies and individuals which provide literature regarding

the various uses of essential oils.

11.     Since the late 1990s, Plaintiff LSP has provided one of the authoritative works on the use of essential oils called the Essential Oils Desk Reference ("EODR").

12.     Because of the quality of the work, the EODR sells tens of thousands of copies per year.

13.     Shelton became an independent distributor for Young Living.

14.     Shelton was an enthusiastic supporter of Young Living's essential oils and championed their use with animals.

15.     Shelton was effusive with her praise of Young Living and their products.

16.     Shelton was offered speaking positions at Young Living conventions and routinely traveled to Utah for meetings regarding Young Living and its products.

17.     In early 2012, Shelton learned that a new version of the EODR was being produced.

18.     Shelton volunteered to revise the section of the EODR having to do with animals.

19.     Shelton prepared and submitted a revised section as agreed.

20.     Shelton did not place any limits on the use of her revisions and Shelton was compensated by having her name mentioned in the EODR.

21.     At the same time that Shelton was revising the veterinary portion of the EODR, Shelton was also working on her own work on the use of essential oils for animals.

22.     Hoping to utilize the good will of the EODR, Shelton named here new work The ANIMAL DESK REFERENCE:  Essential Oils for Animals ("ADR").

3

23.     The copyright for the ADR is owned by CRAH.

24.     Shelton also extensively referenced the EODR in an attempt to associate herself and the publication with the well-known EODR.

25.     In late 2013, Shelton approached Young Living with the idea of promoting her own line of essential oils for veterinary use.

26.     Shelton's goal was to keep her distributorship for Young Living while at the same time selling her own line of essential oils for use with animals.

27.     When Young Living was not comfortable with the idea, Shelton turned hostile to both Young Living and LSP.

28.     On or about July 2, 2014, Shelton sent a cease and desist letter to LSP demanding that LSP remove the chapter she had revised from the EODR.

29.     On or about July 14, 2014, LSP responded and noted that all of the communications it was privy to demonstrated that Shelton had agreed to the use of her material and was compensated with the use of her name in the EODR.

30.     LSP further noted that while it intended to remove Ms. Shelton's content, it reserved the right to conduct a further investigation.

31.     Since 2014, Shelton and CRAH, now competitors of Young Living and LSP, have gone out of their way to make false and disparaging statements against Young Living and LSP.

32.     Shelton even went so far as to demand that anyone who was supportive of Young Living "unfriend" her on FACEBOOK.

33.     Shelton has falsely accused Young Living and LSP of copying her work, when

4

Shelton knows that she voluntarily submitted her revisions and that she was compensated by having her name listed in the well-known EODR.

34.     Shelton further accused Young Living and LSP of stealing her work – fully knowing that she volunteered the revisions and received her compensation.

35.     As a competitor, Shelton has repeatedly attacked the integrity of Young Living and LSP and claimed that she is honest to a fault.

36.     Shelton, however, has promoted a method of falsifying animal vaccinations in order to make it appear that the animal has been vaccinated when the person administering the vaccine in fact knows that the animal has not been vaccinated..

37.     Shelton has also claimed that she left Young Living when she got to know management of the company, when in reality Shelton knew the management of the company for at least two years prior to leaving and only left after Young Living was not comfortable with her attempts both to be a distributor for Young Living and marketing her own line of essential oils.

38.     Shelton's statements have damaged the reputation of Young Living and LSP.  For example, in one post one of Shelton's followers states: "Melissa do you make your own oils now?  Or what is your oil source?  I use your books and want to make sure the oils I purchase are made with integrity."

39.     Despite the numerous emails demonstrating that she had voluntarily done the revisions and despite being compensated by inclusion of her name in the EODR and being given additional speaking engagements, Shelton continues to claim that LSP did not have authorization to use her work.

40.     Moreover, Shelton and CRAH continue to use Young Living and the EODR to promote the sales of her work on-line.

41.     In fact, to this day, the description of the ADR on Amazon.com specifically references both Young Living Essential Oils and the EODR.

42.     The ADR continues to repeatedly reference the EODR in an effort to associate itself with the far better known work of LSP.

43.     Moreover, the ADR continues to copy design elements and research in the EODR.

44.     LSP has a contract with Young Living to use their trademarked names and research.  Shelton and CRAH do not have any agreement with Young Living to use their trademarks or research.

45.     In 2017, LSP released a version of the EODR specifically for animals.

46.     LSP named its work the Essential Oils Animal Desk Reference to build on the considerable good will in the EODR.

47.     Shelton and CRAH now claim to have trademark rights in the Animal Desk Reference – despite the fact that the ADR's name was adopted to trade off the goodwill of the EODR.

48.     Shelton and CRAH have asserted that LSP's use of Essential Oils Animal Desk reference infringes its trademark rights.

SLC_3472158.1

Case 2:17-cv-01135-BCW   Document 2   Filed 10/13/17   Page 7 of 14

## COUNT I

### (Federal False Advertising – 15 U.S.C. § 1125(a)

49.     Plaintiff LSP incorporates the foregoing allegations and further alleges:

50.     Shelton and CRAH are competitors of LSP.

51.     Both LSP and Shelton/CRAH sell books on the uses of essential oils.

52.     The works of LSP and Shelton/CRAH are sold through similar channels, including, but not limited to, amazon.com.

53.     Shelton/CRAH have marketed their work in an effort to create an association with Young Living and LSP's EODR.

54.     For example, the amazon.com advertisement for Defendant's work specifically references both Young Living and the EODR.

55.     A search on amazon.com for "Essential Oils Desk Reference" pulls up the sixth and seventh editions for the Essential Oils Desk Reference, along with the Animal Desk Reference produced by Defendants.

56.     LSP has been using the Essential Oils Desk Reference mark since at least May of 2000.

57.     The Essential Oils Desk Reference mark is suggestive or has developed secondary meaning due to the long and exclusive use thereof by LSP.

58.     By adopting and continuing to use the Animal Desk Reference mark, Shelton and CRAH are trading off the goodwill of LSP's Essential Oils Desk Reference Trademark and are creating a likelihood of confusion with LSP's well known work.

7

59.     By copying design elements of the EODR, Shelton and CRAH are attempting to trade off the goodwill of the EODR.

## COUNT II

### (Unfair Competition – Lanham Act – 15 U.S.C. § 1125(a))

60.     Plaintiff LSP incorporates the foregoing allegations and further alleges:

61.     Defendants Shelton and CRAH are competitors of LSP.

62.     Defendants' speech is commercial speech and may be regulated by Congress.

63.     Shelton and CRAH have falsely accused LSP of copying their work, while knowing that Shelton provided the work for inclusion in LSP's EODR and was compensated for that including by receiving credit in a publication which is purchased by tens of thousands of essential oils users.

64.     Defendants Shelton and CRAH have falsely claimed that LSP's Essential Oils Animal Desk Reference ("EOADR") does not contain original content.

65.     Defendants Shelton and CRAH have made false claims about the effectiveness or appropriateness of treatments recommended in the EOADR.

66.     On information and belief, the comments of Shelton and CRAH have been made knowingly, intentionally and with the intent of injuring LSP.

67.     The actions of Defendants constitute unfair competition pursuant to section 43(a) of the Lanham Act.

68.     Wherefore, Plaintiff LSP makes a claim against Defendants for unfair competition.

## COUNT III

### (Declaratory Judgment of Non-Infringement - Trademark)

69.     LSP incorporates the foregoing allegations and further alleges:

70.     Despite adopting the Animal Desk Reference to trade off the goodwill of LSP, Defendants have now alleged that LSP's Essential Oils Animal Desk Reference is infringing Defendant's rights in the phrase Animal Desk Reference.

71.     The Animal Desk Reference is merely descriptive.

72.     The Defendants have failed to develop secondary meaning in the phrase Animal Desk Reference

73.     LSP use of Essential Oils Animal Desk Reference is based on their well-known Essential Oils Desk Reference work and LSP have not infringed any rights owned by Defendants.

74.     Wherefore, LSP seeks a declaratory judgment that is has not infringed any trademark rights of Defendants.

## COUNT IV

### (Declaratory Judgment of Non-Infringement - Copyright)

75.     LSP incorporates the foregoing allegations and further alleges:

76.     Defendants have accused LSP of infringing Defendants' copyrights either in the EODR or the EOADR.

77.     Many of the references cited by Defendants are ideas and concepts which are not

9

protectable in copyright.

78.    LSP had a right to use material volunteered by Shelton for which Shelton received

compensation in the form of credit in the EODR.

79.    LSP has not copied any protectable subject matter of Defendants.

80.    Wherefore, LSP seeks a declaratory judgment that is has not infringed any

copyrights of Defendants.

**COUNT V**

**(Tortious Interference with Economic Relations)**

81.    LSP incorporates the foregoing allegations and further alleges:

82.    Defendants are competitors of LSP.

83.    Defendants have made false claims against LSP.

84.    Defendants have made the false claims to customer and potential customers of

LSP.

85.    On information and belief, Defendants actions were done willfully and with the

intent of harming LSP.

86.    Defendants have used improper means to interfere with LSP's customers and

potential customers, including making false and defamatory statements about LSP.

87.    On information and belief, Defendants have caused LSP harm by causing LSP's

customers and potential customers to doubt the integrity of LSP and to avoid LSP's products.

88.    Wherefore, LSP makes a claim against Defendants for tortious interference with

economic relations.

10

**COUNT VI**

**(Trade Libel)**

89.     LSP incorporates the foregoing allegations and further alleges:

90.     Defendants have made intentional false statements about the quality of LSP's products, including, but not limited to, claims that the material was copied by LSP or otherwise obtained illegally.

91.     On information and belief, Defendants' actions were intentional and designed to harm LSP.

92.     On information and belief, Defendants made their false statements in an attempt to bolster the sale of their own work.

93.     Defendants' actions have harmed LSP and its reputation.

94.     Wherefore, LSP makes a claim for trade liable against Defendants.

**COUNT VII**

**(Deceptive Trade Practices – Utah Code §13-11a-3))**

95.     LSP incorporates the foregoing allegations and further alleges:

96.     Defendants have used design elements of the EODR to create a likelihood of confusion or misunderstanding of the source or affiliation of Defendants' goods.

97.     Defendants have used references to the EODR to create a likelihood of confusion or misunderstanding of the source or affiliation of Defendants' goods.

98.     Defendants have used references to the trademarks of Young Living despite LSP having the exclusive agreement to reference Young Living's trademarks to create a likelihood of

11

confusion or misunderstanding as to the source or affiliation of Defendant's goods.

99.     Despite having been warned by LSP about the unauthorized use of he EODR's design elements, references to LSP's publications and Young Living's trademarks in an effort to create confusion or misunderstanding as to the source or affiliation of Defendants' goods.

100.     Wherefore, LSP makes a claim for deceptive trade practices against Defendants.

## COUNT VIII

### (Common Law Trademark Infringement)

101.     LSP incorporates the foregoing allegations and further alleges:

102.     LSP has used the Essential Oils Desk Reference mark since at least 2000.

103.     LSP has common law rights in the Essential Oils Desk Reference mark.

104.     Defendants have used LSP's mark to promote their product.

105.     Defendants have created a likelihood of confusion as to their affiliation with LSP.

106.     Wherefore, LSP makes a claim for common law trademark infringement.

## PRAYER FOR RELIEF

In view of the foregoing, LSP asks this Court to grant relief as follows:

1.     For Judgment that Defendants have engaged in false advertising in violation of 15 U.S.C. § 1125(a);

2.     For Judgment that Defendants have engaged in unfair competition in violation of 15 U.S.C. § 1125(a);

3.     For Declaratory Judgment that LSP has not infringed any trademark of

Defendants.

4.      For Declaratory Judgment that LSP has not infringed any copyrights of

Defendants.

5.      For Judgment that Defendants have tortiously interfered with LSP's economic

relations.

6.      For Judgment that Defendants have engaged in trade libel against LSP.

7.      For Judgment that Defendants have engaged in deceptive trade practices.

8.      For Judgment that Defendants have committed common law trademark

infringement.

9.      For an award of LSP's damages in an amount to be proven at trial;

10.     For an award of Defendants' profits in an amount to be proven at trial;

11.     For an injunction against further infringing, interfering and deceptive conduct by

Defendants;

12.     For LSP's costs;

13.     For and award of LSP's attorneys' fees;

14.     For an award of punitive damages;

15.     For such other award as the Court considers just.

**JURY DEMAND**

LSP seeks a trial by jury of all issues so triable.

DURHAM JONES & PINEGAR

/s/ Randall B. Bateman
Randall B. Bateman

13

Sarah W. Matthews

*Attorneys for Plaintiff*
YL Widsom, LLC, d.b.a. Life Science Publishing

14